**Melvin Alphonzo LEWIS pro se, Plaintiff,**

v.

**STATE OF OKLAHOMA, Defendant.**

**Civ. No. 69–95.**

United States District Court
W. D. Oklahoma.
Sept. 17, 1969.

**118**

Melvin Alphonzo Lewis, pro se.

H. L. McConnell, Asst. Atty. Gen., Oklahoma City, Okl., for defendant.

### ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

DAUGHERTY, District Judge.

Petitioner, an Oklahoma State prisoner, proceeds under 28 U.S.C.A. § 2254, for habeas corpus relief complaining that his imprisonment by reason of his conviction of the crime of murder was accomplished in violation of his Federal Constitutional rights. He was represented by counsel throughout his state court proceedings. His conviction was appealed to the Oklahoma Court of Criminal Appeals which affirmed the conviction and modified the sentence from death to a term of life imprisonment. Lewis v. State, 451 P.2d 399 (Okl.Cr.1969).

Petitioner has raised numerous allegations which he claims violated his Federal Constitutional rights and, thus, render his present imprisonment illegal. Petitioner's claimed violations of his Federal Constitutional rights are as follows:

1. Prejudicial remarks by the prosecution to the jury concerning Petitioner's motive for the crime of which he was convicted.

2. Suppression of evidence favorable to the Petitioner, which evidence was to be given by a witness and co-defendant, Donald Leo Pendleton, to the effect that another co-defendant committed the crime.

3. Deliberate and unnecessary interruption of the Petitioner's trial so that the Court could accept a plea of guilty from a co-defendant.

4. A plan or scheme on the part of the prosecution to deny Petitioner due process of law, in that the prosecution knew a co-defendant, Donald Leo Pendleton, would testify that a co-defendant other than the Petitioner committed the crime of which Petitioner was convicted.

5. In furtherance of said plan or scheme, sentencing of the co-defendant was deferred to lead Petitioner to be-

lieve that said co-defendant would testify that Petitioner committed the crime.

6. The Petitioner was required to not call the co-defendant, Donald Leo Pendleton, as a witness because of the tactics of the prosecution.

7. The failure of the prosecution to call said co-defendant to testify was fundamentally unfair.

8. The prosecution knew that Petitioner was not at the scene of the crime and that Petitioner did not shoot the victim.

9. The court's instruction to the jury describing the three degrees of murder was prejudicial and erroneous, misleading the jury as to what degree of the crime should apply to the Petitioner.

10. The court erred in its instruction on Petitioner's confession.

11. The written confession of Petitioner used by the State was not a confession and thus improper evidence.

12. The instruction on the three degrees of murder does not permit Petitioner to know under which theory he was convicted.

13. The prosecution, before the jury, equated Petitioner's confession with a plea of guilty, thus confusing the jury as to what law to apply to the case.

14. The court influenced the jury to the prejudice of the Petitioner in its statement of facts contained in its Instruction 15.

15. The Petitioner was entitled to have explained to the jury his theory of the case on the hypothesis that his testimony and that of his witnesses was true.

16. There was no evidence to support the instruction relating to the Petitioner's depositing the body of the victim on the public highway, there leaving him to die.

17. Prejudicial language was used by a witness with reference to the leaving of the victim's body on the highway, i. e.,"dumped" or "dragged", before the jury, the effect of such words being to represent the Petitioner as a depraved individual to the jury.

18. Prejudicial references to the Petitioner's race in that a witness referred to the victim as a white man, thus emphasizing that Petitioner is a negro.

19. There is no evidence to support the prosecution's opening statement that the Petitioner shot the victim at a filling station, not killing him at that time, and took the victim to a car, and that the prosecution made this assertion in bad faith.

20. Petitioner was not indicted by grand jury.

21. Petitioner's sentence of life imprisonment is cruel and unusual punishment.

22. There is no evidence to support the verdict.

23. The repeated references by the prosecution to the victim as a white man prejudiced the Petitioner in the mind of the jury.

24. The county attorney, before the jury, expressed his personal opinion and stated facts not proved by evidence.

25. The prosecution deliberately excluded negroes from the jury.

26. Petitioner's arrest was illegal, in that he was arrested on suspicion.

27. Petitioner was not represented by a lawyer when he signed a statement at the police station.

28. Persons opposed to capital punishment were systematically excluded from the jury, resulting in a jury composed of only persons who believed in capital punishment.

█ The filed and records of this case include Petitioner's casemade or transcript of his trial which was submitted by the Respondent. In accordance with the provisions of 28 U.S.C.A. § 2254(d), the Court has reviewed the same with respect to Petitioner's habeas corpus claims, and, in the absence of a claim by Petitioner that factual determinations affecting his habeas corpus claims made by the state trial court and appearing in the Petitioner's casemade

**120**

are not fairly supported by the record, the Court has presumed the same to be correct. See Ortiz v. Baker, 411 F.2d 263 (Tenth Cir. 1969); Maxwell v. Turner, 411 F.2d 805 (Tenth Cir. 1969). The Court has also considered those parts of the record relating to factual determinations by the state trial court affecting Petitioner's habeas corpus claims, as provided in 28 U.S.C.A. § 2254(d) (8), and its conclusions with respect to such parts of the record of Petitioner's trial are set out in connection with the Court's considerations of Petitioner's individual claims following.

■ The Court finds with reference to the grounds or complaints raised herein as follows:

Complaints (1), (3), (6), (7), (9), (12), (14), (15), (16), (17), (18), (19), (22), (23) and (24) do not raise Federal Constitutional questions. The most that could be said for each of them or all of them considered together is that they tend to deal with a question of denial of due process in that Petitioner was not provided a fair trial. However, the Court finds and concludes that these claims, either individually or collectively, do not fairly raise an issue of fair trial being denied Petitioner. " * * * if federal power is invoked to set aside what California regards as a fair trial it must be plain that a federal right has been invaded." Lisenba v. California, 314 U.S. 219 at p. 239, 62 S.Ct. 280 at p. 291, 86 L.Ed. 166 at p. 181 (1941). None of the matters alleged by Petitioner in the above enumerated claims, as previously stated, show invasion of federally protected rights, therefore, there is no issue of denial of due process by an unfair trial of Petitioner.

■ With reference to complaints (2), (4), (5) and (8), Petitioner has alleged that certain evidence favorable to him was suppressed by the prosecution. In Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the prosecution's suppression of an accomplice's confession, after Petitioner's request for evidence favorable to him, was held to violate the due process clause of the Fourteenth Amendment. This case holds as follows:

"We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." 373 U. S. at p. 87, 83 S.Ct. at p. 1197, 10 L. Ed.2d at p. 218.

The question here is whether the Petitioner has alleged a factual situation which, if taken as true, raises a *Brady* issue of suppressed favorable evidence. To make out a case under the *Brady* rule, Petitioner must state facts showing: (1) Evidence which is favorable to him, (2) Such evidence was in the possession of the prosecution at some time during the Petitioner's trial, (3) The evidence was suppressed and not made available to the Petitioner on his request therefor, and, (4) The evidence was material either to the issue of Petitioner's guilt or punishment.

Of the four elements of a *Brady* situation set out above, Petitioner has made allegations satisfying only the first and second of them. At the trial Petitioner failed to made a request for evidence in the hands of the prosecution favorable to him, a matter which he now admits. However, he maintains that no request is necessary, citing United States ex rel. Meers v. Wilkins, 326 F.2d 135 (Second Cir. 1964).

■ The proponents of the "no request" rule have found only one adherent in the Supreme Court. In Giles v. Maryland, 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737 (1967), Mr. Justice Fortas urged that the state is under a constitutional duty to voluntarily disclose favorable evidence (386 U.S. at pp. 101–102, 87 S.Ct. at pp. 810–811, 17 L.Ed.2d at pp. 760–761), but his position was vigorously opposed by Justices Harlan, Black, Clark and Stewart (386 U.S. at pp. 116–119, 87 S.Ct. at pp. 818–820, 17 L. Ed.2d at pp. 769–770). Had the Su-

preme Court desired to turn the *Giles* case on a rule of compulsory disclosure without request, it could have done so. Therefore, this Court takes the request requirement of the *Brady* case as the Supreme Court's definitive expression on the matter. Moreover, the *Meers* case is distinguishable from the instant case because the court held that the prosecution had a duty to make known to the defense the existence of two disinterested witnesses who would have testified that the defendant was not a participant in the robbery. In *Meers* the defendant had not learned of the witnesses in advance of trial, whereas, in the case at bar, defendant had full knowledge of Pendleton's (the witness claimed to possess favorable evidence) identity and participation in the murder and his availability to testify and could have called him to testify in his behalf had he so desired. The Petitioner has, thus, failed to show a request for favorable evidence in the hands of the prosecution and, in addition, that the alleged favorable evidence was suppressed from Petitioner as he knew of the witness and had the ability to call him as his own witness had he desired to do so.

Petitioner has also failed to show that the allegedly suppressed evidence of Pendleton's testimony was material to the issue of his guilt or punishment. The nature of the evidence suppressed is alleged to be that Pendleton would have testified that Petitioner's co-defendant, Tilford, rather than Petitioner did the actual shooting of the victim of their crime. Petitioner was charged jointly with Pendleton and Tilford with murder in the course of their committing the felony of robbery with firearms. Such crime is described and defined in 21 Okl.St.Ann. § 701. The penalty therefore, as in all other cases of murder, is death or life imprisonment. 21 Okl.St.Ann. § 707. Under Oklahoma law, all of the defendants charged in a case like this may be equally guilty of the crime of murder even though only one of them did the actual killing. Morris v. State, 68 Okl.Cr. 147, 96 P.2d 88

(1939). So, even had such evidence upon request been made available to the Petitioner in the course of his trial it would have had no legal consequence in respect to his guilt of the offense with which he was charged. This does not depend on who pulls the trigger. Johnson v. State, 386 P.2d 336 (Okl.Cr.1964); Oxendine v. State, 350 P.2d 606 (Okl.Cr.1960). Such evidence is simply not material to the issue of the guilt or innocence of Petitioner.

Also, the allegedly suppressed evidence is not material to the issue of punishment inasmuch as the Petitioner has received the minimum sentence for this crime. In the *Brady* case, the trial procedure was split into two separate phases, one for the determination of guilt and one for the assessment of punishment, both by the jury. Because the prosecution had suppressed evidence consisting of the confession of Brady's accomplice, the case was remanded for retrial on the issue of punishment alone. In Oklahoma and in the Petitioner's trial, there was no provision for a split proceeding as in *Brady*. The jury determined both guilt and punishment from the same evidence. The jury returned a verdict of death. However, on appeal, the Oklahoma Court of Criminal Appeals reduced the same to life imprisonment, the minimum sentence under 21 Okl.St. Ann. § 707. Thus, any possible constitutional defect with respect to the issue of punishment, if any, has now been cured and such issue is moot. There is no possibility that the Petitioner's sentence would be any less on retrial on the sole issue of punishment, if the alleged favorable evidence were available, as any lesser sentence is not permitted by law. It follows then, that Petitioner has raised no constitutional issue with respect to the alleged suppressed evidence under the rule announced in Brady v. Maryland, supra.

With reference to complaints (10), (11), (13), and (27), Petitioner alleges that the court's instruction to the jury on his confession was erroneous; that the State's use of his confession was im-

proper; and that Petitioner was not represented by a lawyer when he signed a statement at the police station. The trial transcript shows (Casemade at p. 525) that the defendant's counsel agreed with the court's instructions in proceedings had outside the hearing of the jury. An examination of the instruction regarding the confession shows it to be correct as a matter of law. Petitioner contends that the use of his signed statement was improper in that he was not represented by a lawyer when he signed it. The state evidentiary hearing conducted with reference to the Petitioner's confession, held at the trial outside the presence of the jury, resulted in the Judge finding the same to have been voluntarily given to include advice regarding his rights.

Such factual determinations, first by the trial Judge and later by the jury, are evidenced by the trial transcript or casemade and are presumed correct pursuant to the provisions of 28 U.S.C.A. § 2254(d), and the Court, upon review of the same, finds and concludes that they are fairly supported by the record. Even though Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966), had not been decided at the time of Petitioner's trial and the rule announced therein was not in effect, the procedures followed in determining the voluntariness of Petitioner's statement admitted in evidence were in conformity with what that case later established. The mere fact that counsel was not present at the time the statement was given does not, by that fact alone, make it involuntary. Petitioner was advised of his right to counsel and made no request therefor. Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), provides that an accused is entitled to counsel *on request* for same. While a waiver of the right to counsel may not be presumed by the silence of an accused, see Sullins v. United States, 389 F.2d 985 (Tenth Cir. 1968), the circumstances of the brief interrogation of Petitioner shortly after the crime was committed,

his demonstrated willingness to talk about the crime even before he could be advised of his rights, and the clearly voluntary nature of the statement given as evidenced by the record militate against Petitioner's claim here and support the trial court's factual finding of voluntariness made after an evidentiary hearing. It is not necessary that one accused of crime expressly decline the assistance of counsel in order that statements made voluntarily by him may be used against him. Bond v. United States, 397 F.2d 162 (Tenth Cir. 1968).

The Court finds and concludes that the factual determinations of the state trial court regarding the voluntariness of the confession, made after a full evidentiary hearing, were based upon the correct application of federal law and this Court should not afford a second evidentiary hearing to merely reiterate the proper application of federal legal rights. Maes v. Patterson, 401 F.2d 200 (Tenth Cir. 1968).

With reference to Petitioner's complaint (20) that he was not indicted by a grand jury, it is well established that proceeding by way of Information, as done herein by the State of Oklahoma, does not violate the Federal Constitution. Williams v. Page, 289 F.Supp. 661 (E.D.Okl.1968); Hampton v. State of Oklahoma, 368 F.2d 9 (Tenth Cir. 1966); Lem Woon v. State of Oregon, 229 U.S. 586, 33 S.Ct. 783, 57 L.Ed. 1340 (1913). This complaint is without merit as a matter of law.

With reference to Petitioner's complaint (21) that the sentence he received of life imprisonment is a cruel and unusual punishment in violation of the Eighth Amendment, the fixing of penalties for crimes is a legislative function. What constitutes an adequate penalty is a matter of legislative judgment and discretion and the courts will not interfere therewith unless the penalty prescribed is clearly and manifestly cruel and unusual punishment. Where the sentence imposed is within the limits prescribed by the statute for the offense

committed, it ordinarily will not be regarded as cruel and unusual. Edwards v. United States, 206 F.2d 855 at p. 857 (Tenth Cir. 1953). The penalty for murder in Oklahoma is death or life imprisonment. 21 Okl.St.Ann. § 707. The United States Supreme Court has held that a death sentence upon conviction of murder is not a cruel and unusual punishment in violation of the Eighth Amendment. Louisiana ex rel. Francis v. Resweber, 329 U.S. 459, 67 S.Ct. 374, 91 L.Ed. 422 (1947). Therefore, Petitioner's contention the life imprisonment upon conviction of murder is a cruel and unusual punishment is without merit as a matter of law.

██ With reference to complaint (25), the Petitioner contends that the prosecution deliberately excluded negroes from the jury by use of its peremptory challenges, thus violating his Federal Constitutional rights. It has been held otherwise by the United States Supreme Court. In the case of Swain v. State of Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), it was held that, in a particular case, a prosecutor may constitutionally use his peremptory strikes to eliminate all of the accused's race from the jury and that an accused is not constitutionally entitled to a proportionate number of his race on the jury which tries him.

██ With reference to complaint (26), Petitioner claims his arrest was illegal. Without entering upon a consideration of the legality of the arrest, it is sufficient to point out that it is well established that an unlawful arrest in itself does not entitle Petitioner to habeas corpus relief under 28 U.S.C.A. § 2254, without a showing that something occurred as a result thereof to deny Petitioner a fair trial. Howard v. Allgood, 272 F.Supp. 381 (E.D.La.1967); United States ex rel. Fletcher v. Wainwright,

269 F.Supp. 276 (S.D.Fla.1967). The bare conclusory allegation of an illegal arrest, as made herein by Petitioner, is legally insufficient to warrant relief. Martinez v. United States, 344 F.2d 325 (Tenth Cir. 1965).

██ With reference to complaint (28), the Court does not agree with the contention that Petitioner's case was prejudiced by the exclusion of prospective jurors opposed to the death penalty in conflict with the rule of Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). In Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968), it was held that the *Witherspoon* decision does not govern where the sentence imposed is life imprisonment. In the instant case, Petitioner's death sentence was modified to life imprisonment. Therefore, *Witherspoon* has no application to this case and this complaint of Petitioner is without merit as a matter of law.

After careful consideration and examination of the habeas petition and the written state court record, the Court finds and concludes that the complaints presented herein do not constitute a violation of any of the Petitioner's rights under the Constitution, laws or treaties of the United States, for the reasons stated above.

The Court further finds and concludes that an evidentiary hearing is not warranted on the Petition for the complaints either do not constitute violations of the Petitioner's Federal Constitutional rights as a matter of law or have been previously and correctly factually determined against Petitioner as shown by the written State court record which has been examined by the Court pursuant to the provisions of 28 U.S.C.A. § 2254(d).

The Petition for Habeas Corpus is denied this 17th day of September, 1969.